UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM F. ADAMS,

                                Plaintiff,

                                                            **Hon. Hugh B. Scott**

                                                                13CV435A

                        v.                                   **AMENDED
                                                                Order**

BUFFALO PUBLIC SCHOOLS a/k/a
BUFFALO PUBLIC SCHOOL DISTRICT,
and PATRICK FISHER, Individually,

                                Defendants.

        To clarify the record, this is the Amended Order, amending the Order of July 10, 2014

(Docket No. 46), incorporating changes enacted in subsequent Orders (Docket Nos. 47, 51).  The

changes eliminate references to a missing contract (Docket No. 47) and to a production issue

regarding W2 forms to which the parties subsequently stipulated (Docket No. 51).

                                * * * *

        Before the Court are two motions.  First is plaintiff's motion to compel (Docket No. 20)[1].

Second is defendant Patrick Fisher's cross-motion for a protective Order (Docket Nos. 23, 31)[2],

and in part in opposition to plaintiff's motion to compel.  Codefendant Buffalo Public Schools

---

[1]In support of his motion, plaintiff submits his attorney's Declaration with exhibits, Docket No. 20; his
attorney's Reply Declaration with exhibits, Docket No. 42; as well as his opposition to Fisher's motion, noted
below.  In opposition is defendant's Fisher's cross-motion, Docket No. 23, described below, and the School
District's response, Docket No. 37.

[2]In support of his motion, Fisher submits his attorney's affidavit, Docket No. 24, a series of exhibits (some
filed under seal), Docket Nos. 24-29, 35, 37, 38; his Memorandum of Law, Docket No. 30; his attorney's Reply
Affidavit, Docket No. 41; and Reply Memorandum of Law, Docket No. 41.  In opposition, plaintiff submits his
attorney's Declaration in opposition, Docket No. 39.

a/k/a Buffalo Public School District (hereinafter "BPSD" or "School District") did not file a

motion and filed responses to plaintiff's motion (cf. Docket No. 37, defendant's response, filed

under seal), with the School District's response being virtually identical to that of Fisher's (cf.

Docket No. 24).

      Responses to both motions eventually (cf. Docket No. 22) were due by April 17, 2014,

with replies due April 24, 2014 (Docket No. 32).  Oral argument was held on June 17, 2014

(Docket No. 45; see Docket Nos. 40, 43), and this Court reserved decision on these motions

(Docket No. 45).

## BACKGROUND

      This is an action under Title VII, 42 U.S.C. §§ 2000, et seq., New York State Human

Rights Law, N.Y. Exec. Law §§ 290, et seq., and 42 U.S.C. § 1981, alleging discrimination

based upon race (Docket No. 1, Compl.).  Plaintiff is an African-American male who alleges that

he was employed by defendant BPSD (id. ¶ 2).  Plaintiff alleges that defendant Patrick Fisher "is

a supervisor employed by Defendant BPSD to oversee janitorial services to certain schools and

employees located within the City of Buffalo and its' school district, including School #43," the

school where plaintiff worked (id. ¶¶ 4, 5, 15).  He alleges generally that Patrick was an

"employee" as defined in relevant statutes and BPSD was an "employer" under those statutes (id.

¶¶ 7-8).  He claims that Patrick not only supervised him but also governed "every aspect of his

employment including scheduling, hours, payment of wages, and all other issues related to his

employment" (id. ¶ 16).

      Fisher answered (Docket No. 5), admitting that he was employed by BPSD and provided

custodial services at School #43, but denied plaintiff's other allegations in paragraph 4 of the

Complaint (Docket No. 5, Fisher Ans. ¶ 4) and denied that he was an employee under the relevant statutes (id. ¶ 7).  He also denied plaintiff's assertion that he governed every aspect of plaintiff's employment (id. ¶ 16).

The BPSD separately answered (Docket No. 9; see also Docket No. 8, Ans. (unsigned by counsel)), admitting that it employed Fisher but "adamantly denies that Plaintiff is an employee" of the BPSD (Docket No. 9, Ans. ¶¶ 4, 2).  The School District denied that Fisher was plaintiff's immediate and only supervisor and knowledge regarding how much of plaintiff's employment was governed by Fisher (id. ¶ 14).  The School District also denied that it was an "employer" or that plaintiff and Fisher were "employees" under the statutes at issue (id. ¶ 6).

This Court next entered a Scheduling Order (Docket No. 14), which was amended on January 2, 2014 (Docket No. 16).  The current schedule had discovery due to be completed by April 16, 2014, and motions to compel discovery due by March 17, 2014 (Docket No. 16).  These deadlines were held in abeyance pending resolution of these motions (Docket No. 22).

*Relevant Collective Bargaining and Other Agreements*

Curiously, defendant Patrick Fisher is an employee of the BPSD (see Docket No. 24, Def. Fisher Atty. Aff. ¶ 12) **and also** is an independent contractor of the BPSD (id. ¶ 13) under the terms of the Master Contract, the collective bargaining agreement between BPSD and Fisher's union, Local 409, the International Union of Operating Engineers ("I.U.O.E.") (see id. ¶ 12, Ex. A, or the "Local 409 CBA").  In the midst of normal employment terms and conditions, this CBA has references to a separate agreement, a "custodial engineer contract" (id., Ex. A, Local 409 CBA Art. VI, Sec. J., ("Day School Services" definition), Art. IX, Sec. T (salary

3

under custodial engineer contract)).  Article VI of the Local 409 CBA defines "Day School

Services" as

> "custodial services required to keep school buildings open, safe, clean, heated
> and operating on school days and all other workdays between the hours of 7:00
> a.m. and 5:00 p.m. for the Early Schedule Schools; 7:30 a.m. and 5:00 p.m. for
> the Middle Schedule Schools, and 8:00 a.m. and 6:00 p.m. for the Late Schedule
> Schools unless otherwise specified.
>
> "Included are such services as are required prior to the day school sessions in
> order to have the school buildings heated, cleaned, and otherwise ready for use at
> the time of such day school sessions, and such further cleaning and other services
> as are required as a result of day school sessions.
>
> "Engineer and Custodial overtime will be minimized except in cases where the
> facility is open to the general public for a non-District sponsored activity or where
> the **C.E.C. (Custodial Engineer Contract)** staffing does not allow for the
> flexibility required without a diminishment of "Day School Services".  It is
> recognized and agreed by the parties that the aforementioned conditions are
> without prejudice or precedent to any of the other terms and conditions as set
> forth in this Agreement or the F.L.S.A."

(id., emphasis added).  Section T of Article IX provided that salary increases after July 1, 2007,

"will be reflected in the Custodial Engineer Contract" (id., Ex. A, Art. IX, Sec. T).

Under this independent contractor arrangement, as an independent contractor under a

Unit Service Agreement, also known as a Custodial Engineer Contract ("USA/CEC"), Fisher

employs others to fulfill his contractual obligations (Docket No. 35, Def. Fisher Motion to Seal,

Ex)[3].  In turn, the BPSD pays Fisher and other custodial engineers a certain amount to hire his

own employees to provide custodial services at a particular school (Docket No. 24, Def. Fisher

Atty. Aff. ¶ 13).  Fisher's counsel's affidavit does not give a citation to the precise provision of

the Local 409 CBA to this arrangement, but the BPSD cites Article IX, Sec. T of that CBA

addressing the USA/CEC (Docket No. 37, BPSD Atty. Decl. ¶ 30).  Defense counsel sought to

---

[3]Correction from earlier Order, Docket No. 46, Order at 17; cf. Docket No. 47, Order of July 15, 2014, at 1.
The last sentence of the July 10, 2014, Order, Docket No. 46, at 17, is deleted from this Amended Order.

4

file this USA/CEC under seal (Docket No. 35; <u>id.</u>, Ex.).  This system is known as the "indirect

custodial system," and that system is also used in the New York City public schools, <u>see also</u>

<u>Beck v. Board of Educ. of City of N.Y.</u>, 268 A.D. 644, 52 N.Y.S.2d 712 (2d Dep't 1945), <u>aff'd</u>,

295 N.Y. 717 (1946) (Docket No. 24, Fisher Atty. Aff. ¶ 16).  Under this indirect custodial

system, a custodial engineer like Fisher would hire, pay, supervise, and fire employees to

maintain a school (<u>id.</u> ¶ 14).  Fisher also cites to a 1962 opinion of the City of Buffalo's

Corporation Counsel to the Superintendent of the BPSD, concluding that the chief engineer-

custodian was an independent contractor and that a custodial worker hired by the chief engineer-

custodian was not a School District employee for worker's compensation purposes (<u>id.</u> ¶ 15,

Ex. B).

        Fisher points out that plaintiff is represented by Local 17, I.U.O.E., and that this local has

its own collective bargaining agreement with the Buffalo School Engineers Association

("BSEA") (<u>id.</u> ¶ 19, Ex. C ("Local 17 CBA")), the collective bargaining agent for Buffalo School

Engineers (<u>id.</u>).  Fisher states that the Local 17 CBA was produced to plaintiff (<u>id.</u>).  Fisher then

contends that, in March 2012, plaintiff "voluntarily agreed to and accepted a transfer from Public

School #43 and Defendant Fisher's employ to Public School #37 and the employment by Chief

Engineer – Custodian, Kenneth Robinson" (<u>id.</u> ¶ 20; <u>see also</u> Docket No. 37, BPSD Atty. Decl. ¶

19).

*Discovery Motions*

        At issue in these motions are plaintiff's attempts to obtain the documents regarding the

contractual relationships underlying his employment.  Plaintiff moved on March 18, 2014, to

compel disclosure (Docket No. 20) and Fisher's insistence that these "confidential" documents

not be produced (<u>see</u> Docket Nos. 23, 31). Plaintiff sought from defendants any contracts, term sheets, bid requests, or contract-related documents relating to the relationship between defendants Fisher and BPSD (Docket No. 20, Pl. Atty. Decl. ¶ 16, regarding plaintiff's Document Request #16, Ex. 1, ¶ 26, Ex. 7 (request to Fisher). During oral argument, plaintiff explained that he needs these documents to determine who employed him, the School District or Fisher (<u>see also</u> <u>id.</u> ¶ 38). Defendant Fisher produced his collective bargaining agreement with the BPSD (<u>see</u> <u>id.</u> ¶ 27), the Local 409 CBA, while the BPSD offered to produce "the Master Contract between the Buffalo Board of Education and Local 409 and the Buffalo Board of Education Division of Plant Services" (<u>id.</u> ¶ 17, Ex. 3), but to date the BPSD has failed to do so (<u>id.</u> ¶¶ 21, 20, Ex. 5). Plaintiff found production of the Local 409 CBA did not demonstrate critical information necessary to understand Fisher's employment relationship with the BPSD (<u>id.</u> ¶¶ 19, 28-29, Exs. 4, 8). The privilege log produced by Fisher did not note the reason why his contract with the BPSD was privileged and plaintiff questioned why a contract allocating public funds would be privileged (<u>id.</u> ¶¶ 36, 39).

Plaintiff also sought from Fisher "all W2 forms, work schedules, overtime schedules" for four of plaintiff's coworkers at School #43 (<u>id.</u> ¶ 31, Exs. 1, 9, regarding Document Request #13). In addition to general objections to this request, Fisher responded that the W2 and related documents for coworker Patrick Fisher, Jr., would not be calculated to lead to the discovery of admissible evidence and referred plaintiff to payroll journals for the three other coworkers that were separately produced (<u>id.</u> ¶ 33). Plaintiff deemed this response to be insufficient (<u>id.</u> ¶ 34, Ex. 9).

6

Plaintiff also seeks extension of sixty days from entry of an Order on his motion for completion of discovery (id. ¶ 3), to which defendants voiced no objection.

The School District contends that the Local 409 CBA responded to plaintiff's Document Request #16, since it governs the employment relationship between Fisher and the School District (Docket No. 37, BPSD Atty. Decl. ¶ 29). The School District claims that the USA/CEC is exempt from disclosure pursuant to "Proprietary Information, Trade Secrets, and/or Confidential Information exceptions" (id. ¶ 31), presumably of New York State Freedom of Information Law, N.Y. Pub. Officers Law § 87 (see id. ¶ 32). The School District next claims that the terms of the existing USA/CEC are part of the contract negotiation for the next agreement; hence it should not be disclosed (id. ¶¶ 33-34); also that the inter-agency and intra-agency exemptions under FOIL also preclude discovery (id. ¶ 35). Finally, the School District opposes imposing plaintiff's motion costs as a sanction since the School District believes it acted in good faith in producing what it did (id. ¶ 36).

The parties later stipulated to the production of documents responsive to Document Request # 13, the W2 forms (Docket No. 51, Order of Aug. 5, 2014, at 2). A subsequent Order deletes references to relief regarding this production (id.; cf. Docket No. 46, Order of July 10, 2014, at 14), amending the relief for plaintiff's motion (Docket No. 46, Order of July 10, 2014, at 14-15).

*Fisher's Cross-Motion and Motions to Seal*

Fisher moved for a protective Order against producing the documents sought by plaintiff (namely the USA/CEC and worksite analysis quarterly reports), citing (among other concerns) confidentiality and trade secrets (Docket No. 23). Elsewhere, he argues that disclosure of the

USA/CEC and the worksheet analysis of other custodians at School #43 would disclose Fisher's "profit margin" and that disclosure could hinder the BSEA in its collective bargaining with Local 17 (Docket No. 35, Fisher Atty's Aff. for Motion to File Under Seal ¶¶ 7-10).  Fisher argues that plaintiff's motion to compel should be denied (and his motion for a protective Order granted) because the USA/CEC plaintiff ultimately seeks confidential contract material, and it contains trade secrets that would injure Fisher's competitive position if disclosed, and the documents constitute inter- or intra-agency material privileged from disclosure under New York Freedom of Information Law, N.Y. Pub. Officers Law § 87(2)(c) (or "FOIL") (Docket No. 30, Fisher Memo. at 1-2, 2-5, 5-6, 6-8).  He claims that he has shown good cause for a protective Order against this disclosure, based upon the reasons he opposes disclosure (id. at 8-9).

Fisher moved to seal his responses to plaintiff's motion and to portions of his motion for a protective Order (Docket No. 31; see Docket No. 32, Order sealing).  The Collective Bargaining Agreement between the BPSD and Local 17 and the BSEA was also filed under seal (Docket No. 36; see Docket No. 34, BPSD Motion to file under seal).  Fisher also sought to have sealed a Custodial Engineer Contract and worksite analysis (Docket No. 35).

Plaintiff responds that Fisher is assuming the positions of the BPSD which Fisher has no standing to raise (Docket No. 39, Pl. Atty. Decl. ¶ 7).  He contends that Fisher conflates federal discovery requests with a state FOIL request and the three grounds raised to oppose discovery are not relevant and are meritless (id. ¶¶ 13, 12).

DISCUSSION

I.      Applicable Standards

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention.  See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter."  Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).  Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A).

Under Rule 26(c), this Court may issue a protective Order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery.  Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into); Bridge C.A.T. Scan Assoc. v. Technicare Corp., 710 F.2d 940, 945 (2d Cir. 1983) (see Docket No. 30, Fisher Memo. at 8). Under this rule, the Court has power to protect against abuses in discovery.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984).  The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought.  Mitchell v. Fishbein, 227 F.R.D. 239, 245

9

(S.D.N.Y. 2005).  This Court has broad discretion in issuing such a protective order.  <u>Seattle</u>

<u>Times</u>, <u>supra</u>, 467 U.S. at 36.  As noted by Fisher (Docket No. 30, Fisher Memo. at 8), the party

seeking the protective Order has the burden of showing good cause, <u>see</u> <u>Dove v. Atlantic Capital</u>

<u>Corp.</u>, 963 F.2d 15, 19 (2d Cir. 1992); <u>United States v. Talco Constr.</u>, 153 F.R.D. 501, 513

(W.D.N.Y. 1994) (Fisher, Mag. J.), with good cause shown by demonstrating specific need for

protection, <u>Talco Constr.</u>, <u>supra</u>, 153 F.R.D. at 513-14.

II.     Application—Plaintiff's Motion to Compel and Fisher's Motion for a Protective Order

      A.     Timing of Plaintiff's Motion

Preliminarily, Fisher and the School District each argue that this motion should be

dismissed as being untimely (Docket No. 24, Fisher Atty. Affid. ¶ 5; Docket No. 37, BPSD Atty.

Decl. ¶ 5).  In his response, plaintiff argues that the motion was filed at 12:17 am on March 18,

2014, due to issues uploading all of the attached documents on to the Court's electronic filing

system, thus it was not a full day late as Fisher and the School District appear to argue (Docket

No. 42, Pl. Atty. Reply Decl. ¶ 4, Ex. 1 (notices of electronic filing to verify date and time of

plaintiff's filing).

Defendants are not prejudiced by the less than one-day delay in filing plaintiff's motion.

Therefore, this Court will address the merits of plaintiff's motion (and, by extension, Fisher's

cross-motion for a protective Order).

      B.     Merits

            1.     Plaintiff's Motion to Compel

This Court notes that plaintiff and Fisher are members of two separate locals of the same

union, the I.U.O.E., and the indirect custodial system described by Fisher results in one union

local entering into a collective bargaining agreement with an association of union employees in a different local of the same union.  The indirect custodial system also leads to a chief engineer-custodian, like Fisher, to have the dual roles of employee and independent contractor, depending upon which task or which agreement is being considered.  Thus, it appears from the Local 17 and Local 409 CBAs and the USA/CEC that plaintiff was employed by Fisher, an independent contractor of defendant BPSD.

Fisher and the BPSD argue that, under New York FOIL, <u>see</u> Public Officers Law § 87(2)(c) (impair present or imminent contract award or collective bargaining negotiations), (d) (trade secrets), (g) (inter- and intra-agency materials), defendants need not produce inter- or intra-agency material (Docket No. 30, Fisher Memo. at 6-8).  First, Fisher fails to state which agency he belongs to.  The contract at issue is one he entered as an independent contractor and not as a School District employee.  As plaintiff notes (Docket No. 39, Pl. Atty. Decl. ¶¶ 16-17), FOIL applies to governmental agencies and Fisher, his Local, and the BSEA are not governmental agencies.  The two cases cited by Fisher (<u>cf.</u> Docket No. 30, Fisher Memo. at 3; Docket No. 39, Pl. Atty. Decl. ¶¶ 21-22) involve municipal agencies, <u>Cohalan v. Board of Educ. of Bayport-Blue Point Sch. Dist.</u>, 74 A.D.2d 812, 425 N.Y.S.2d 367 (2d Dep't 1980) (school board); <u>Trauernicht v. Board of Cooperative Educ. Servs.</u>, 95 Misc.2d 394, 395, 407 N.Y.S.2d 398, 399 (Sup. Ct. Nassau Cnty. 1978) (BOCES), and not a union or association of union members serving as an independent contractor for the municipality.  As for the BPSD, if FOIL applied in federal actions, it could claim the exemption from FOIL disclosure of inter- and intra-agency materials that would not be available for Fisher.

But for both defendants, they presume that FOIL creates a statutory privilege (or series of privileges) against disclosure in a federal action.  That is not the case, Grossman v. Schwarz, 125 F.R.D. 376, 380 (S.D.N.Y. 1989) ("New York's FOIL creates no statutory 'privilege' from discovery in a civil action," citing federal and New York cases).  As one district court in this state found "a pending litigation cannot be used as a shield from FOIL requests, and FOIL requests cannot be used as a sword to emasculate discovery rules," Greenberg v. Board of Educ., 125 F.R.D. 361, 362 (E.D.N.Y. 1989) (McLaughlin, J.).  There, then-District Judge McLaughlin held that the court lacked "jurisdiction to review the Board of Education's denial of plaintiff's FOIL requests.  To the extent, however, that the documents plaintiff seeks pursuant to FOIL are discoverable under the Federal Rules of Civil Procedure, then plaintiff is entitled to the production thereof notwithstanding the Board of Education's refusal to produce those documents pursuant to FOIL," id.  As noted by another district court, "even if New York State had created a rule of confidentiality against disclosure of inmate identification, this would not be binding on a federal court in a federal question case.  See, e.g.,  King v. Conde, 121 F.R.D. 180, 186-87 (E.D.N.Y. 1988); Burke v. New York City Police Dep't, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)," Dixon v. Coughlin, No. 91 Civ. 7019, 1993 U.S. Dist. LEXIS 5090, at *3 (S.D.N.Y. Apr. 19, 1993); King, supra, 121 F.R.D. at 187 (New York law "does not govern discoverability and confidentiality in federal civil rights action.  Federal discovery is somewhat more liberal than New York State discovery."); see also Firestone Tire and Rubber Co. v. Coleman, 432 F. Supp. 2d 1359, 1371 (N.D. Ohio 1976) (FOIA excluded material may still be discoverable under Federal Rule of Civil Procedure 34).  "Questions of privilege in federal civil rights cases are governed by federal law," King, supra, 121 F.R.D. at 187 (rejecting application of New York

12

Civil Rights Law § 50-a as bar to discovery); <u>see also</u> <u>Burke</u>, <u>supra</u>, 115 F.R.D. at 224 (also

rejecting § 50-a bar in federal action).

Defendants have not stated grounds that these documents are not discoverable under the

<u>Federal Rules</u>.  Thus, FOIL is not applicable here.

Related to the FOIL arguments, Fisher contends that these agreements are confidential

and, coupled with work analysis of salaries paid to custodians, are trade secrets that he does not

want disclosed to Local 17, plaintiff's union.  The documents are sought, however, outside of the

negotiation context and Fisher has not asserted that plaintiff would disclose these documents to

his local.

Plaintiff's requests are intended to lead to admissible evidence (<u>cf.</u> Docket No. 41, Fisher

Atty. Aff. ¶ 14), here identifying which party employed him (for document request #16) and

discovering the difference in treatment of plaintiff as opposed to his Caucasian coworkers (for

#13).  Therefore, plaintiff's motion to compel (Docket No. 20) production of the USA/CEC is

**granted**, but as conditioned by the protective Order discussed next.

        2.        Fisher's Cross-Motion for a Protective Order—Request #16—USA/CEC

During oral argument, the parties mentioned a stipulation defendants proposed to allow

release of these documents but with a limited circulation (<u>see also</u> Docket No. 24, Fisher Atty.

Decl. ¶ 61, Ex. H; Docket No. 41, Fisher Atty. Decl. ¶ 5), but plaintiff would not agree to the

stipulation.  Plaintiff's counsel believed that this stipulation would have precluded plaintiff's

counsel from discussing the USA/CEC terms with plaintiff (Docket No. 41, Fisher Atty. Decl.

¶ 6), but Fisher argued that it only would preclude disclosure to plaintiff's union (<u>id.</u> ¶ 7).

Under Rule 26(c)(1)(G) for the manner of revealing trade secrets, or other confidential research, development, or commercial information, the **USA/CEC is to be produced to plaintiff and his counsel for their eyes only** and not to be released to third parties (including plaintiff's union, Local 17).  For purposes of this litigation, it is unlikely that an expert will need to review the terms of these agreements to require an expanded audience for this production and plaintiff has not argued that it needs to have an expert review these documents.  If plaintiff determines that an expert will be required to review this agreement, the parties are free to stipulate to allow expert eyes to review it or plaintiff can seek an amendment of this Order to allow his expert to see it.  Plaintiff's union local is not a party in this litigation and thus has no need to see these agreements.  The pertinent issue in this Title VII case is who employed plaintiff; disclosure beyond plaintiff and his attorney is not necessary for this inquiry.  While this Court is not bound by FOIL and its disclosure exemptions, this Court can fashion the manner of discovery to allow plaintiff and his counsel exclusive access to documents without the wider world seeing them.  If these produced documents are later used in this action, they should be filed under seal to prevent broader dissemination.

As a result, Fisher's cross-motion for a protective Order (Docket Nos. 23, 31) is **granted**, with disclosure of the USA/CEC agreement to plaintiff and his counsel only.  Any further disclosure of this material is either upon stipulation of the parties or by Order of this Court.

C.        Summary

Thus, plaintiff's motion to compel (Docket No. 20) is **granted**, while Fisher's cross-

motion for a protective Order (Docket Nos. 23, 31) is **granted in part** (in limiting the manner

and extend of disclosure) and **denied in part** (in compelling disclosure to plaintiff and counsel).[4]

III.    Reasonable Motion Expenses

As a result of the above, under Rule 37, the prevailing party is entitled to recover its

reasonable motion expenses and the opponent has the right to respond as to why passing such

costs to them is unreasonable or whether the amount claimed is not reasonable.

Rule 37(a) allows a party to apply to this Court for an Order compelling discovery, with

that motion including certification that the movant, in good faith, conferred or attempted to

confer, with the party not making the disclosure to secure it without judicial intervention.

Procedurally, under Rule 37(a)(2)(B) and this Court's Local Civil Rule 37, the movant needs to

make a statement of good faith efforts made to resolve a discovery dispute before making

motions to compel.

> Under Rule 37(a)(5)(A), if the motion to compel is granted, the Court
> "must, after giving an opportunity to be heard, require the party or deponent
> whose conduct necessitated the motion, the party or attorney advising such
> conduct, or both of them to pay the movant's reasonable expenses incurred in
> making the motion, including attorney's fees.  But the court must not order this
> payment if: (i) the movant filed the motion before attempting in good faith to
> obtain the disclosure or discovery without court action; (ii) the opposing party's
> nondisclosure, response, or objection was substantially justified; or (iii) other
> circumstances make an award of expenses unjust."

Fed. R. Civ. P. 37(a)(5)(A) (effective Dec. 1, 2007).

---

[4]Fisher and plaintiff quibble about other discovery that may not have been timely produced by plaintiff compare Docket No. 24, Fisher Atty. Aff. ¶¶ 22-25 with Docket No. 42, Pl. Atty. Reply Decl. ¶¶ 5-7, but no motion to compel this disclosure is before this Court.  Fisher's objections to not receiving discovery demands, Docket No. 24, ¶¶ 28-32, were based on the mistaken assumption that the BPSD employed the witnesses sought by plaintiff and not Fisher.

If a motion is granted in part and denied in part, as is done here, "the court may issue any protective order authorized by Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion," Fed. R. Civ. P. 37(a)(5)(C).

Here, both parties prevail in part, with plaintiff obtaining the sought documents, while defendant Fisher was granted a protective Order restricting this production to a finite audience and narrowing the scope of discovery.  At first blush, it appears that recoveries for both sides might be a wash.  But defendant BPSD did not file its own motion for a protective Order (or join in codefendant's motion) and plaintiff's motion was directed at both defendants (Docket No. 20), thus it may be held liable to some of plaintiff's discovery costs in which he prevailed.  The BPSD may respond to plaintiff's application and indicate (among other grounds, <u>see</u> Fed. R. Civ. P. 37(a)(5)) that nondisclosure, response or objection was substantially justified or that other circumstances make an award here unjust, <u>id.</u>, R. 37(a)(5)(A)(ii), (iii).

Therefore, plaintiff and Fisher are to file their respective applications for reasonable motion costs for those portions of their motions in which they prevailed; that application is due within seven (7) days of entry of the original Order, or by **July 17, 2014**.  Opposing parties may respond to the respective applications within fourteen (14) days of entry of this Order, or by **July 24, 2014**, and the application(s) will be deemed submitted as of **July 24, 2014**.  Fisher filed his application (Docket No. 48) and subsequent Orders (Docket Nos. 50, 51) have held these applications and their briefing in abeyance pending a possible motion for reconsideration by plaintiff (<u>see</u> Docket No. 49).

IV.     Second Amended Scheduling Order

The First Amended Scheduling Order (Docket No. 16) was held in abeyance while these motions were pending (Docket No. 22).  With these matters now resolved, the following Second Amended Scheduling Order is in effect (superseding deadlines in prior Orders):

- Discovery, including expert disclosures, shall be completed by **September 30, 2014**;

- Dispositive motions shall be filed no later than **January 5, 2015**;

- Referral to mediation ends on **January 9, 2015**;

- If no motions are filed by January 5, 2015, parties are to contact the chambers of Judge Arcara by **January 22, 2015**, to schedule a Final Pretrial Conference before that judge.

IV.     Filings under Seal

Finally and upon further reflection, it is not clear why the Local 17 CBA needed to be filed under seal, as sought by BPSD (Docket No. 37).  This is the collective bargaining agreement of plaintiff's union local with the chief custodial engineers association and that arrangement is not confidential or controversial.  It is the Local 17 CBA (the document currently under seal) that is under negotiation and those labor negotiations is the reason why defendants seek to preclude disclosure of the USA/CEC to Local 17 member, the plaintiff (Docket No. 30, Fisher Memo. at 6).  In fact, Fisher produced a copy of this CBA to plaintiff in response to his demands (Docket No. 24, Fisher Atty. Aff. ¶¶ 19, 51, Ex. C; Docket No. 20, Pl. Atty. Decl. Ex. 7).  According to Fisher's theory of the relationships involved, the School District is not a party to the Local 17 CBA and thus lacks standing to seek to have it filed under seal.  This

document (Docket No. 38) is **unsealed**.  A subsequent Order (Docket No. 51) also unsealed the School District's response (Docket No. 37).

CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 20) to compel is **granted**, while defendant Patrick Fisher's motion for a protective Order (Docket Nos. 23, 31) regarding this production is **granted in part, denied in part**, as discussed above, with production thus allowed being attorney and plaintiff's eyes only and further disclosure only upon either stipulation or by Order.

Plaintiff and defendant Fisher (<u>cf.</u> Docket No. 48) may submit their respective applications to recover reasonable motion expenses within seven (7) days of entry of this Order, or by **July 17, 2014**, and opposing parties may respond to these applications within fourteen (14) days of entry of this Order, or by **July 24, 2014**.  These applications are **held in abeyance** pending any motion to reconsideration of this Order (Docket Nos. 50, 51).

A Second Amended Scheduling Order, as indicated above, is entered and supersedes prior Scheduling Orders.

The Local 17 CBA (Docket No. 38), sealed upon the motion of defendant Buffalo Public Schools (Docket No. 37) shall **be unsealed** and the Court Clerk is instructed to unseal, as well as the School District's response to plaintiff's motion (Docket No. 37; <u>see</u> Docket No. 51).

So Ordered.

 /s/ Hugh B. Scott<br>Hon. Hugh B. Scott<br>United States Magistrate Judge

Dated: Buffalo, New York
       July 10, 2014
As Amended, August 5, 2014

18